As you know, this is a very narrow issue that we have here. This was a civil rights case that was litigated in the Eastern District of California and litigated to a fairly well, if I may say so. It's taken me five years to get here, six years I guess now. The problem that we had below on the attorneys fee issue was that the district court judge set a wholly new standard for civil rights attorneys that essentially eliminates the possibility for people like me with small firms or sole practitioners to be able to do these cases. What did he do? We have to remember the basic standards, which I'm sure you're familiar with, the prevailing rate issue. In this case, there was no dispute about the prevailing rate in our community. It was not challenged by the other side. We had declarations about the prevailing rate. It was $300 an hour for an experienced civil rights attorney, and I've been doing this for almost 30 years. Were there any – the district judge did not cite any declarations going the other way. In fact, he cited the defendant's declarations as to their fees and said that's not relevant. Was there any declarations by civil rights lawyers that they were charging less than the $300? No, and as a matter of fact, the senior partner in the defense firm had put in a declaration in another case that I filed with the court where he said $300 an hour was the rate for an experienced attorney, and it could go as high as $400 in a unique case. So there was no dispute about that fee. Now, I pointed out to you that at oral argument, Judge Levy did say, and I have heard him say it before, I want to hold the line at $250 an hour, and we've done that since 1990, and you're going to tell me you think there's a reason to raise it. Well, yeah, but I think he got there another way, and I think that that is not – Are you claiming that there is an unwritten policy in the Eastern District among the judges? I'm not – I don't want to put words in your mouth by any means. I'm just trying to understand your theory. Judge England, obviously, has awarded higher fees, yes? That's right, and I put in one of his orders, and – Judge England awarded $300 or $350? Between $325 and $425. So someone of the lawyers got $325 an hour, and Sanford Rosen, whom we all know, got $425. Well, can't the court collapse the fee and have a consolidated fee for the work he did, both as an attorney and work which should have been done more properly by someone less skilled than you or a paralegal? That's a standard procedure in some districts. I understand that, and I explained to Judge Aliti – he brought that up during oral argument, and I explained to him, I've been in big firms, and I have charged clients for doing this pyramidal scheme, and it's actually much more expensive. Let me give you an example. I had one recently where I actually let somebody else do it. Well, I got the deposition summary. He wasn't as up to speed as I was. I had to read it and check the transcript. I had to change some of the keywords because you use those in the trial to locate impeachment issues, to locate clarification issues. It actually ended up costing the client a good deal more to do it that way. I do it this way because it's efficient. But that's not the court's fault. In other words, perhaps you should have a more experienced paralegal do your indexing or summaries or something. But the basic question is, can't the court have a consolidated so-called neutral fee for taking into consideration both the work that a skilled attorney does and the work which a less skilled or paralegal should have done? I don't suppose I can say that a court can't do that. What I would suggest to you, however, is the better way to look at it is under the Lodestar method and look at the amount of time that was spent. If you look at what I did here, I had 30-some depositions. I prepared for them. I took them all myself except for the expert depositions of which there were maybe eight. I prepared for them. I prepared witnesses. I took depositions. Adverse depositions were the most important in this case. I summarized them and I tried the case. And I spent an average of eight hours for each deposition. I mean, that's very, very efficient. I try to go for efficiency and be the most prepared attorney in the courtroom. And I think the court should honor that. Now, if I were spending 20 hours doing this, perhaps you cut the hours, Your Honor. Let me ask a question that relates to the one Judge Cowan asked. The district court pointed, I think, to two areas where it thought a lower rate was appropriate, the depositions and the deposition summaries. Is that right? Right. And on the deposition summaries, he actually lowered the hourly rate to the paralegal rate of $75, right? $70 an hour, yes. So that left 75 hours which were devoted to your taking depositions. Yes. That's my calculation. I'll take your calculation. And the total hours you spent that you were seeking fees for was, what, 2,000? 2,000 hours? Yeah, it was about that. It was about that. Now, you have to remember that in this case, every discovery motion was we had discovery motions about everything. Everything was fought. We had three appeals on the same issue from the magistrate up to the district court. Did Judge Levy cite any other specific reasons for choosing the lower rate as opposed to the requested rate other than the fact that you took depositions and that you summarized depositions? No. He called it management issues. He said he did not like the way the case was managed. And I don't know what he'd do with a SOLE practitioner, but he just didn't like the way it was managed. And I've not heard that before. Certainly, you know, you could change your style, I guess, but it isn't going to be as good a trial. I mean, I've talked to many lawyers since this came out who are extremely upset because they're saying, you know, I'm finding, too, it's not efficient to have two and three different people working on various aspects of the case if I know I'm going to try it. And we knew this case would be tried from day one. One of the interesting things to do in fee disputes in litigation is to see what the other side charged its client. Do you know that? I do know that. It's in the papers. I don't remember where it is. And I would suggest that you look at it. What was it? They are an insurance defense firm. And what did they charge their client? And they charged, I think, $145 an hour. He can tell you that. And when we do insurance defense, that's what we charge. But ‑‑ How many hours did they spend on this case? Gosh. You know, I have that mark. Let me get it. He may be able to tell us if you don't have it at hand. Let me answer. We'll ask your opponent. They charged less. There's no question about it. If you had, you say, large law firm experience. Yes. A large law firm had handled this case. Much of the work which was done by you personally would have been done by someone of lesser experience. Is that correct? Probably you charged what I charge. Okay. Well, the question then I'm asking you is, I don't think you should be penalized because you're a sole practitioner. At the same time, the defendant paying the bill should not be penalized because you are a sole practitioner. So where do we make the compromise having that in mind? We don't want to penalize you as a sole practitioner for doing work which may have been done by a large law firm by someone else. And I ‑‑ you know, the problem here is, Your Honor, you have no evidence in this record of what would have happened if this were done by a large law firm. I think there are probably more than one of you up there who will know the answer to that. The answer to that is it would have been twice as much. You put five, six, seven, eight people into a case, they're all going to do work. You know, they're all going to spend time and money. They bill at a higher rate than I do, a much higher rate than I do. I didn't use large firm rates when I did this. If I had, I would have had some that say for a large firm in our town, the prevailing rate is between 4 and 450 an hour. It's economy of scale. We did a great job here. This guy needed representation. We got everything he asked for. We did a very efficient trial. The time was cut down to next to nothing, which cost a lot of money for trial prep. I want to make one more point before I sit down and reserve a minute, and that is I would really like you to look at the appeal issue. He slashed the appeal time tremendously. If you look at the tables of contents alone that I put in the brief, you will see that Judge Levy ruled on summary judgment on a wholly different theory than anybody had briefed. We were only talking on the summary judgment about whether a Fifth Amendment case could be brought was ripe and qualified immunity. And he ruled everything. He said as long as you have a potential inverse case, you have no search and seizure issue, you have no procedural due process issue, you have none of that. And that was very new. So the appeal was a very good case. Thank you. Good morning, Your Honors. Tom Kroeger representing the City of Sacramento, Max Fernandez, Joshua Pena, and John Vanilla. In answer to a question that was posed, I do not have the total number of hours my firm spent on the case. My best recollection is it was approximately two-thirds of what Ms. Miller's firm spent on the case. You got beat badly. Yes, Your Honor, I did. It was not an enjoyable experience. It was a well-litigated case. My client has certain procedures for remediating what they consider to be a dangerous situation. It followed those procedures. They turned out in the jury's mind to be improper. But the decision was made. We've got a policy. We followed it. And we're going to continue it. Is there any reason why the plaintiff's lawyer should subsidize the fact that your client didn't, not only didn't pay up, but also was found to be deserving of punitive damages in its actions? Any reason why the plaintiff's lawyer should subsidize that process? The plaintiff's lawyer did not subsidize the process. You're not claiming that she didn't, in fact, work those hours? I have no evidence that Ms. Miller and would not suggest that Ms. Miller ---- Did you hear my question? Yes. I have no evidence. I wouldn't even suggest it. Are you claiming that she didn't work the hours? I am not claiming she didn't work the hours. Okay. And she did beat you pretty bad. Yes, she did, Your Honor. Well, the question is, why shouldn't she receive the rate that she claims is the load star and multiply it by the hours that she reasonably worked, which the court found to be legitimate? The court did not find that she reasonably worked all those hours. It cut them substantially. It cut some. But those after the cut, why shouldn't she get the load star times that? The load star is merely the starting point. Hensley teaches that one of the issues to be taken into consideration is the particular complexity and difficulty of the case. And that's what Judge Levy focused on. He said there were certain hours, certain tasks which should have been assigned to a different lawyer. And at least for one of those, he actually discounted the allowable hourly rate. That was for the preparation of documents, summaries? Yes, he did. The only other thing he cited was the fact that your opposing counsel, who prevailed in the case, actually took all of the depositions and did her own summaries, which by my chamber's calculation is about 75 out of the 2,000 hours which you've conceded to us were reasonable hours. If half of the hours had been expended towards these things that Judge Levy thought should have been done by other folks, perhaps it would be understandable. But I don't know what the percentage, 75 out of 2,000, is. It's something like what, 2 percent, 3 percent? That may be, Your Honor. He perhaps did not detail as much as he could have. However, the district court is not required to do so. This Court reviews the district court's ruling on an abuse of discretion standard. Hensley and this Court and Suzuki have held that the district court must only, need only give a concise but clear explanation. So your position is that if the district court, at the end of the day, feels that 97 percent of hours legitimately claimed were appropriately charged at the higher rate, that it's okay because of 3 percent of those hours to reduce the overall hourly rate. Is that your position? No, because the district court did not find that 97 percent of the hours were, should be billed at the higher rate. It took one example. But the district court is there. Judge Levy's the one who handled the case. He is the one who had the best view, and with no disrespect to Your Honors, the best view of what went on and what was necessary. Ms. Miller conceded earlier. She couldn't say that a district court can't lower the hourly fee using a blended rate. In your scenario, the court would have to go through the fee application line by line by line by line and then decide on each instance whether it's a higher or lower rate. But didn't the court here both cut the hourly rate on some of the work, saying that's paralegal work, and then also use the blended rate? It's a little weird. I mean, he's already excluded some by saying that's paralegal work. I'll only give a 70 an hour. And then when it goes to come up with a rate, he says, well, it's a blended rate because she did all sorts of things, including summarizing the positions. Two items, Your Honor. First, it wasn't just a paralegal issue. Judge Levy did note that there was an inordinate, he felt, an inordinate amount of time spent by the most senior attorney on certain tasks, which could have been handled by a different attorney and which would have been appropriately billed at a lower level. And in his discretion, which he has, he used a blended rate as opposed to going through Was there any evidence from plaintiff civil rights lawyers in the Sacramento area or in the Eastern District that they could have done it for less or they would have done it for less? Not plaintiffs, Your Honor. However, our rate, and I have to take a little bit of I will get to that once we stick with my No, Your Honor. And I apologize for backing off from your question. No, the Why don't you just listen? Don't talk. You gave me my answer. The question was, was there such evidence from a plaintiff's lawyer? And your answer is no. No. Okay. If there isn't, and if the question we're looking for is what could this plaintiff have litigated this case for? I mean, essentially what we're trying to do is step into the best lawyer in town, but I'm entitled to a lawyer that will represent me in pursuing this case. What evidence is on the record that there were lawyers available in the Eastern District? Or I don't know, is it Sacramento or is it the whole East? I don't know what you're looking at. The Eastern District goes quite a ways south of Bakersfield. But let's just say the Eastern District. That if Ms. Miller, thank you, Ms. Miller had not been willing or available to take the case, that there was somebody else who could have done it cheaper. Not for civil rights attorneys. However, Ms. Miller's own declaration indicated she handles cases at between $250 and $400 an hour. Therefore, she is willing to accept So she might have done it for $400. Or she might have done it for $250. And she said she does this kind of case at $250? She said her fees range from $250 to $400 per hour. I see. And that's the evidence that $250 is, he could have gotten it for $250. That is certainly evidence that she is willing to accept employment at $250 an hour. Maybe that depends on how contingent it is, how difficult, and so on. Is there anybody who said they would have taken this case for $250? No. So how can we sustain the district court's hourly rate? Because the district court has reviewed the case, handled the case, went through an explanation of the methods it used as required by Hensley, and in its discretion, has the authority and has the right to lower or adjust the fee. But not below what a willing lawyer who's competent to handle the case would have done. The court can't just say, well, we think $3 an hour is enough, is the right rate. I mean, this is not a determination of sort of some just fee. It is a question of alternatives. Is this out of line with what another lawyer would have been willing to do the case for? It turns out if she charges $1,000 an hour and there's evidence that other civil rights lawyers will do it for $300, then we say, well, you don't get the $1,000, you get whatever others. But don't we have to look at comparables? Doesn't it have to be some evidence that, in fact, this could have been done for less money, that an equally good result could have been done, could have been achieved by a lawyer of equal competence for less money? And Judge Levy found that by saying that a number of the items, a number of, a fair amount of the work could have been done by lesser qualified, lesser experienced attorneys. And on that basis, he deemed that the $250 blended rate was fair. And he came up with that out of where? How does he know that there are attorneys who could have done some of that work for less money? Did you present evidence of attorneys who say, gee, I would have been glad to take some of this work for $250, or I would have been glad to do deposition transfer, you know? Was there evidence like that? My firm, which is not an insurance defense firm, which handles civil rights and employment cases, most of our work bills $145 an hour. For plaintiffs? No. And you take it on a contingency, right? You send out the bill and you wait years to see whether the case comes in, right, before you get paid? Actually, sometimes we wait way too long to get paid, but for plaintiffs. Way too long in your book is six months, right? Could be, yes. But not often beyond that? No, Your Honor. What would the fee have been if the judge would have taken the rate that he said was appropriate, $250 an hour, multiplied by the number of hours that he found were reasonably done, and then take a lesser rate for those hours that were done for a document preparation and summary, which he found that Ms. Miller was overqualified to bill for at her rate? What would the bottom line then have been? Your Honor, I have not done that type of calculation. Well, it would have been a lot more than she got this way, though, wouldn't it? Not necessarily, because that would require Judge Levy to go through a line-by-line analysis. Well, he already did that. He already did that. No, he did not. He specifically said, I'm not going to go through the bill and classify each entry at a particular level. I'm going to use a blended rate. Does he have to do that before he uses a blended rate? If you're going to use a blended rate in between what an attorney would have gotten and what a paralegal would have gotten, then you've got to say, well, 50 percent of this work was done properly by an experienced attorney and 50 percent by a paralegal. He can't blend the rate out of whole cloth. It's not being blended out of whole cloth, Your Honor, but the district court is not required to go into that kind of a detailed examination of the bill. And in fact, the cases relied upon by the plaintiff and appellant here, Chad, for example, the court decided, we're not going to use different rates because we, the district court, are not going to go through the function of reviewing every single line of the bill. We're going to select a single rate and apply it to the fee award. Okay. Thank you. Your time is up. Ms. Miller, you have the better part of a minute for a bottle. If you wish to take it, it's always risky to take a bottle. Thank you. But you're an experienced lawyer, so you know. Get slapped around a lot. Thank you very much. You asked about their hours. In the appellees I think Judge Hawkins did. In the appellee's supplemental brief at page 300 and 301, they have their hours listed. They worked 1,900 hours, a little more than that, and you will note that the two partners did 98 percent of the work, okay, because he's identified the players. The second thing is, why do I charge $250 sometimes? That's my rate for insurance defense in federal court. When an insurance company wants a federal specialist, they'll pay $250. And I take $250, but I get paid every day. Was there any, I didn't see any discussion of the contingency fee as a, I'm sorry, this wasn't a contingency fee, but it was, you weren't going to get paid by your client. Right. I don't charge my clients any percentage of their recovery. I only accept fees. No, but the fee is contingent in the sense that if you had lost, it's gone. It's gone. That's right. I didn't see any discussion, although just leave these orders quite long, so maybe I missed it. Was there any discussion of that? Was there any claim on your part that that's a factor that needs to be considered? I pointed out under the car factors that, indeed, it was contingent fee, and that I was waiting a long time. But, you know, I've just never had the problem before. I did not anticipate where he was going. I was really quite stunned, or I would have done a whole lot more with it. But he knows that, just as you know that. You know, we know this. We know that you do these things, the risk is very high. Thank you. That's what you do. I have one more thing to tell you. May I? Of course. I just want to say, he cut 38 percent out of the bill after saying seven times in the thing that it was a very well-litigated case and it was a wonderful result. If that's going to happen to lawyers, you're not going to have very many valid civil rights cases that are pursued. Thank you. And I thank you for your time. Any chance that our counselor here in beautiful San Francisco, here very close to the courthouse steps where many settlements happened, any chance that counsel could work this out and spare us the burden of a decision? We've never heard Senator Crawford say that. We have a wonderful group of mediators here, and if you thought there was some chance. I want to contemplate it. Let me tell you about my last case as a district judge. This is an anecdote, but what the heck. I'm presiding, so I'll take, I'll indulge. I had a trial in district court about a year ago, and plaintiff won, and there was a fee application, and plaintiff's counsel requested $350, and defense lawyer came in and said, I charge $145. So I gave him $400. I said $350 wasn't enough. Just something to contemplate as you decide whether or not you want to mediate this case. Counselor interested, I will be happy to defer submission for a few days to give counsel a chance to work it out. If you would like, you probably have a cell phone or such thing. I'm sure Ms. Miller will lend you hers. Or if not, you can go to my office, it's 255, the door's open, just use the phone, call your client, and if you get approval, just walk down to the mediator's office. You can find them. They're very good. And this seems like the kind of case that, you know, you've heard our questions, you have a pretty good idea of what our doubts and concerns are, and this is the kind of case that lawyers should be able to work out themselves. Would you make that effort? I will, Your Honor. Ms. Miller? I will certainly make the effort, but I will point out to you that that order sits in the Eastern District of California with some weight. I understand. We'll defer submission for a week. If counsel wish us at that point to defer submission further so they can pursue negotiations, they need only send us a letter. If we don't hear in a week, we'll submit the case and decide it. And trust me, we will decide it. Thank you. Okay? Thank you. Submission is deferred. Thank you. We will next hear argument in Chaplain v. Conway.
judges: Kozinski, Hawkins, Cowen